J-S57021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEVON BILLINGSLEA | : | |
| | : | |
| Appellant | : | No. 2922 EDA 2016 |

Appeal from the Judgment of Sentence August 19, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos.:  CP-51-CR-0001988-2015
CP-51-CR-0001989-2015

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 10, 2018**

Appellant, Devon Billingslea, appeals from the judgment of sentence imposed following his bench conviction of aggravated assault, possession of an instrument of a crime (PIC), simple assault, recklessly endangering another person (REAP), criminal trespass, and indirect criminal contempt (ICC).[1]  We affirm.

The trial court aptly summarized the facts of this case as follows:

> On January 16, 2015, [Appellant] was involved in an altercation with Felicia Parks ("Ms. Parks") and her friend Daymond Baker ("Mr. Baker") at 5811 Webster Street in Philadelphia, Pennsylvania.  Prior to the incident, [Appellant] and Ms. Parks were in a relationship, which ended in 2014.  After the dissolution of the relationship, Ms. Parks filed for a Protection from

_____

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 2701(a), 2705, 3503(a)(1)(ii), and 23 Pa.C.S.A. § 6114(a), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

Abuse Order ("PFA") against [Appellant]. However, at roughly 2 [a.m.] on January 16, Ms. Parks and Mr. Baker were inside Ms. Parks' house when they heard noises at the dining room window. At that time, Ms. Parks discovered that [Appellant] was standing outside the window saying something, but she could not hear what because he was outside [of] the locked window. At that time, [Appellant] went around to the kitchen window, which was open. When Ms. Parks attempted to slide the window closed, [Appellant] struck her in the face with a closed fist. In response to this, Mr. Baker pushed [Appellant] away. [Appellant] then walked to the front window, which was also locked; he threw a rock at the glass storm door, which shattered. After that, Ms. Parks and Mr. Baker testified that they saw [Appellant] walking down 60th Street Way, so they believed that he had left the area. However, roughly five minutes later, [Appellant] came "tiptoeing" down the steps from the upstairs area of the house, and told Mr. Baker to leave. (N.T. Trial, 4/26/16, at 23). Mr. Baker and [Appellant] had some "back and forth" while Ms. Parks searched for her cell phone in the kitchen. (*Id.* at 24). At that time, Ms. Parks' 1[4]-year-old child, S.P., came downstairs; she stated that she put her hands up to show that she was not trying to hit [Appellant], and stood between him and Mr. Baker. At that time, S.P. saw [Appellant] make a quick motion with his hand. Mr. Baker then indicated that he had been stabbed by [Appellant]. Ms. Parks states that Mr. Baker pulled his shirt up and blood began gushing out. S.P. said that [Appellant] "darted out of the house" and she called 911. (*Id.* at 159). At that point, Mr. Baker "started sliding down the couch and then he vomited," while S.P. spoke to the dispatcher about what to do next. (*Id.*). She indicated that emergency personnel arrived within 5-10 minutes of the initial call.

Mr. Baker also testified regarding the incident involving [Appellant]. He stated that [Appellant] lunged at him, and Ms. Parks' daughter got between Mr. Baker and [Appellant]. At that time, [Appellant] stabbed Mr. Baker in the chest, which left a dime or nickel sized circular scar on the left chest area. After the stabbing occurred, [Appellant] walked out the front door and left. After being transported to the hospital, Mr. Baker underwent surgery within [a half-]hour of his arrival. He then spent 10 days in the hospital, and was instructed to continue seeing the doctors for follow-up appointments every two weeks [until August of 2015]. Mr. Baker also stated that he continued to have trouble breathing and experienced chest pain as a result of his injuries.

(Trial Court Opinion, 12/21/17, at unnumbered pages 1-3) (most record citations omitted; record citation formatting provided).

Appellant proceeded to a bench trial on April 26, 2016. At the continuation of trial on May 13, 2016, Appellant filed a motion to dismiss the case, based on the Commonwealth's alleged failure to provide discovery materials.[2] The trial court denied the motion, and found Appellant guilty of the aforementioned offenses. On August 19, 2016, the court sentenced him to an aggregate term of not less than two and one-half nor more than five years' incarceration, followed by five years' probation. This timely appeal followed.[3]

Appellant raises the following issues for our review:

I. Whether the [c]ourt was in error in denying Appellant's motion to dismiss for failure to provide the mandatory discovery requested and filed on May 13, 2016[?]

II. The verdict was insufficient as a matter of law, due to the inconsistency of testimony and the omissions of the Commonwealth during trial, and elements of the crimes were not sufficiently proven for the following reasons:

a. As to the PFA, the Commonwealth did not prove that the Appellant was aware of the PFA and therefore the Contempt conviction is contrary to law;

---

[2] The materials at issue were an arrest memorandum prepared by the lead detective, and documentation regarding the possible existence of a security system at Ms. Parks' residence. (**See** Trial Ct. Op., at unnumbered page 5; N.T. Trial, 5/13/16, at 6-10).

[3] Appellant filed a timely concise statement of errors complained of on appeal on January 31, 2017. The court entered an opinion on December 21, 2017. **See** Pa.R.A.P. 1925.

- 3 -

b. As to the Criminal Trespass, the Commonwealth did not prove that the Appellant entered into the premises by breaking into it;

c. As to Aggravated Assault, the Commonwealth did not prove that the Appellant caused or intended to cause serious bodily injury;

d. As to the PIC, Simple Assault, and REAP, the Commonwealth did not prove that the Appellant came at Mr. Baker, rather than the other way around.

(Appellant's Brief, at 7).

Appellant first argues that the trial court erred in denying his motion to dismiss the case for the Commonwealth's failure to provide discovery materials, namely an arrest memorandum and documentation related to a possible security system at the Parks' property. (**See** Appellant's Brief, at 12-16; **see also** this Memorandum **supra** at *3 n.2). Appellant claims that the Commonwealth's failure to produce this evidence to defense counsel constituted a **Brady**[4] violation. (**See** Appellant's Brief, at 12). This issue does not merit relief.

Pennsylvania Rule of Criminal Procedure 573 sets forth the basic principles governing the Commonwealth's discovery obligations in a criminal case, and the sanctions the trial court may impose if the Commonwealth violates those obligations. This Rule provides, in pertinent part:

**(B) Disclosure by the Commonwealth.**

(1) **Mandatory.** In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth

---

[4] **Brady v. Maryland**, 373 U.S. 83 (1963).

might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]

> \* \* \*

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573 (B)(1)(a), (E).

> Rule 573 does not abridge or limit the Commonwealth's duty to provide discovery pursuant to **Brady** [**supra**,] and its progeny. In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution. There are three components of a true **Brady** violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

**Commonwealth v. Maldonodo**, 173 A.3d 769, 774 (Pa. Super. 2017), *appeal denied*, 182 A.3d 991 (Pa. 2018) (quotation marks and citations omitted). Additionally, "[t]he trial court has broad discretion in choosing the

appropriate remedy for a discovery violation[,]" and we apply a deferential abuse of discretion standard of review to any employed remedy. **_Id._**

Here, the trial court explained its rationale in denying the motion to dismiss as follows:

> . . . [I]t was established that the Commonwealth was not in possession of either item [at issue] until the start of trial, at which point both items were provided to defense counsel. Additionally, defense counsel did not allege any prosecutorial misconduct. After a lengthy discussion with counsel, the court found that the arrest memo was not exculpatory to [Appellant] and, therefore, did not constitute a **_Brady_** violation. Additionally, because the Commonwealth had already rested when the exhibit was presented, the court excluded the memo from evidence altogether. As far as the possible existence of security footage, the court found that it was unlikely that the tapes still existed nearly a year and a half later, and that it would be unproductive to engage in a search for non-existent tapes that would further delay the judicial process. Therefore, the court stated that it would take the missing discovery into consideration in rendering its decision, as it would likely go to the credibility of the specific charges. . . .

(Trial Ct. Op., at unnumbered page 5; **_see also_** N.T. Trial 5/13/16, at 38).

After review of the record, and in light of the trial court's express statement that it, as factfinder, would take the discovery issues related to the admitted evidence into consideration in rendering its decision, we discern no abuse of discretion in its denial of Appellant's motion to dismiss. **_See Maldonodo_**, **_supra_** at 774. Therefore, Appellant's first issue merits no relief.

Appellant next challenges the sufficiency of the evidence supporting all of his offenses. (**_See_** Appellant's Brief, at 16-21). Our standard of review is as follows:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted).

Appellant first challenges the sufficiency of the evidence supporting his ICC conviction for violation of the underlying PFA order. (***See*** Appellant's Brief, at 17-18). Appellant maintains that he was never served with proper notice of the order. (***See id.*** at 18).

. . . Where a PFA order is involved, an indirect criminal contempt charge is designed to seek punishment for violation of the protective order. A charge of indirect criminal contempt consists of a claim that a violation of an order occurred outside the presence of the court.

In order to establish indirect criminal contempt, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Commonwealth v. Felder***, 176 A.3d 331, 334 (Pa. Super. 2017) (citations and quotation marks omitted).

- 7 -

Here, as noted, Appellant disputes the second element regarding notice of the order. The trial court explained:

> . . . At trial, the Commonwealth provided a copy of the final PFA order, which the court determined was a self-authenticating public document. (**See** N.T. Trial, 4/26/16, at 34-35). Additionally, the Commonwealth presented a witness, Ms. Parks, who stated that she filed the PFA order with the police department and was told that [Appellant] had been properly served with the order, effectively activating the protections of the PFA. (**See id.** at 46-47).[5] Based on these two points, it is clear that [Appellant] had proper notice of the order, and therefore, cannot claim that he was unaware of the PFA that led to his contempt charge.

(Trial Ct. Op., at unnumbered page 7) (record citations provided).

Viewing the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that the evidence was sufficient to establish that Appellant had notice of the PFA order. **See Palmer**, **supra** at 89. Therefore, Appellant's challenge to his ICC conviction merits no relief.

Appellant next challenges the sufficiency of the evidence supporting his conviction for criminal trespass. (**See** Appellant's Brief, at 18-19). Specifically, Appellant disputes that he entered Ms. Parks' home by breaking into it. (**See id.** at 19).

A person commits the offense of criminal trespass "if, knowing that he is not licensed or privileged to do so, he . . . breaks into any building or

---

[5] Specifically, Ms. Parks testified that she went to the police station as directed and waited there until the police returned from serving Appellant with the order. (**See** N.T. Trial, 4/26/16, at 46-47).

- 8 -

occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii). A person "breaks into" a building or occupied structure if he "gain[s] entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access." **Id.** at § 3503(a)(3).

Instantly, the record reflects that Appellant repeatedly attempted to enter the kitchen of Ms. Parks' home, despite her efforts to keep him out by shutting and locking windows. (**See** N.T. Trial, 4/26/16, at 17-20). Appellant used physical force by punching Ms. Parks in the face as she was leaning over to close a window. (**See id.** at 18-21). Appellant then threw a rock at Ms. Parks' front storm door, shattering the pane of glass. (**See id.** at 21-22). Eventually, Appellant entered the home through the upstairs area, and "tiptoe[d]" down the steps. (**Id.** at 23; **see id.** at 22-23, 104).

Based on the foregoing, we conclude that the evidence was more than sufficient to establish that Appellant gained entry to Ms. Parks' home by use of force, intimidation, the unauthorized opening of locks, or through an opening in the upstairs area not designed for human access. **See** 18 Pa.C.S.A. § 3503(a)(3). Therefore, Appellant's sufficiency claim regarding his criminal trespass conviction fails.

Finally, Appellant challenges the sufficiency of the evidence supporting his aggravated assault conviction. (**See** Appellant's Brief, at 19-21).[6] Appellant argues that the evidence failed to establish his intent, *i.e.*, that he knew or had reason to know that his conduct would result in substantial harm to Mr. Baker. (**See id.** at 20).

The offense of aggravated assault is set forth at section 2702 of the Crimes Code, and provides in relevant part as follows:

> **(a)    Offense defined.—**A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.] . . .

18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. We are also mindful that "[i]t is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body." **Commonwealth v. Crosley**, 180 A.3d 761, 767 (Pa. Super. 2018), *appeal denied*, 2018 WL 4776067 (Pa. 2018) (citation omitted).

_____

[6] Appellant also purports to challenge his PIC, simple assault, and REAP convictions in this same section of his brief, which spans one and one-half pages. (**See** Appellant's Brief, at 19-21). However, because he fails to develop each of these individual claims with citation to pertinent legal authority or the record, they are waived. **See** Pa.R.A.P. 2101, 2119(a)-(c).

- 10 -

Here, the evidence demonstrated that Appellant stabbed Mr. Baker in the heart with a knife. (***See*** N.T. Trial, 4/26/16, at 107-08, 158). Mr. Baker testified that Appellant "stabbed my aorta" and that he "almost died." (***Id.*** at 107-08). This testimony sufficed to establish that Appellant knowingly caused serious bodily injury to Mr. Baker. Therefore, Appellant's final claim lacks merit. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/18