J-S40024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS TYRONE THOMAS JR. | : | |
| | : | |
| Appellant | : | No. 1834 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 23, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0004120-2019

BEFORE: STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED JANUARY 31, 2025**

Curtis Tyrone Thomas, Jr. appeals from the judgment of sentence entered following his convictions for strangulation and simple assault.[1] He argues the trial court abused its discretion in allowing the Commonwealth to treat a witness as hostile and in allowing testimony regarding the victim's age. He also challenges the sufficiency of the evidence to support the strangulation conviction. We affirm.

The trial court set forth the following factual history:

> [Thomas] was arrested for the strangulation and assault of [K.C.] for an incident that occurred at [Thomas's] home in Coatesville, Chester County on September 11, 2019. K.C. was dating [Thomas] at the time of the incident.[2] The confrontation occurred when K.C. took issue with [Thomas] over his relationship with another woman. The argument became physical, [and] the evidence established that [Thomas] strangled and scratched her during the episode.

---

[1] 18 Pa.C.S.A. §§ 2718(a)(1) and 2701(a)(1), respectively.

Once K.C. got away from [Thomas], she made her mother aware of the situation. K.C.'s mother made her report the incident to the police.

> [2] K.C. was 16 years old at the time of the incident.[2] [Thomas,] who was 27 at the time[,] was not charged with any crimes related to having an intimate physical relationship with a minor.

Trial Court Opinion, filed May 3, 2024, at 1-2 (footnote 1 omitted).

Prior to trial, Thomas made an oral motion *in limine* to preclude the Commonwealth from eliciting K.C.'s age at the time of the incident. He argued K.C.'s age was irrelevant and overly prejudicial. N.T., Mar. 13, 2023, at 8-9. The trial court denied the motion, finding K.C.'s age was "germane to the basic biographical facts and to this case," and was not overly prejudicial. ***Id.*** at 20. The court stated Thomas could object if the Commonwealth started to make the trial about K.C.'s age. ***Id.***

Also before trial, the Commonwealth sought a material witness warrant for K.C., and the trial court granted the warrant. K.C. appeared in court. Prior to taking the stand, she stated in open court that she did not want to testify:

> [Assistant District Attorney ("ADA")]: Your Honor, the Commonwealth calls [K.C.]. Your Honor, may I step out for one second?
>
> THE COURT: Good morning. Come on up.
>
> [K.C.]: To the stand? I don't want to testify. What you want to ask me right here.
>
> [ADA]: I have to ask you from up there.

_____

[2] ***But see*** N.T., Mar. 14, 2023, at 157 (detective's testimony that K.C. was 15).

[K.C.]: I don't want to go on the stand. I really don't have to. On everything, I know my rights. I talked to somebody. I don't have to get on the stand.

N.T., Mar. 14, 2023, at 42.

After initially refusing, K.C. took the stand and was sworn in as a witness. While testifying, she attempted to evade answering the prosecutor's questions by responding with her own questions and saying that she did not want to be on the stand. She also stated that the Commonwealth told her that if she did not testify, she would be locked up, and claimed she did not really remember the incident. Such evasion included, but is not limited to, the following:

[ADA]: You can tell me all the reasons then why you guys linked up then. Like, if it wasn't just about being intimate, what else was it about?

[K.C.]: I feel like you don't need to. I feel like if you're really trying to ask me a question, I feel like you should just get to the point of the question. You're asking me bits and pieces from something from one question and I just don't like – that's doing too much for me.

It's already bad enough I'm on the stand and I didn't even want to. Y'all told me if I don't get on the stand, I'm getting locked up. If I don't come here, I'm getting locked up. Y'all going to hurt me. Y'all didn't bring up that piece.

[ADA]: No. Okay. Did I tell you that we had got a material witness petition for you?

[K.C.]: Yeah, you did. And I did say I was coming. For sure. Okay. I did say I was coming.

[ADA]: And did you come before we ever got that petition?

[K.C.]: Yeah. I mean, it's the same information from before, so I don't like . . .

. . .

[ADA]: Okay. Thank you. So, do you remember much about September 11th of 2019?

[K.C.]: No, I don't.

[ADA]: Okay. Do you remember that you stayed over, if you stayed over?

[K.C.]: Okay.

[ADA]: Is that a yes that you stayed over?

[K.C.]: I think so, yeah. I don't remember exactly what happened.

[ADA]: Do you – tell me, first off, before I even ask anymore questions, what all about that day do you remember?

[K.C.]: You said, what day it was? March what?

[ADA]: September. It's the day we're here to talk about.

[K.C.]: Okay. And how old was I?

[ADA]: You were – I don't know. How old were you? 16?

[K.C.]: I was 16 at the time. I'm about to [turn] 20 years old. You think I remember that?

. . .

[ADA]: What caused that?

[K.C.]: You probably remember better than me.

[ADA]: I wasn't there. What caused that, [K.C.]?

[K.C.]: I just remember arguing. I don't remember what caused it.

[ADA]: You don't remember what caused it?

[K.C.]: No, I don't. You can probably enlighten me more than I know. I don't know.

[ADA] Did you give a written statement to police on that day when you went with your mom to Valley Township?

- 4 -

[K.C.]: I probably did, but I don't even remember doing that.

*Id.* at 47-54. During a break, the Commonwealth sought permission to treat K.C. as a hostile witness, and the trial court granted the request.

K.C. testified that she and Thomas had an argument and "[s]tart[ed] putting [their] hands on each other and stuff like that." *Id.* at 77. She stated she "was choked, strangled or whatever" and Thomas used his hands to choke her. *Id.* She testified that after he choked her, she "really don't even remember. [She] just remember[ed] blacking out." *Id.* at 78. She described it as "when you go out and it's summertime and the sun is bright and you just black out? Like that. . . . Like, just black out, see everything black." *Id.* She stated that "everything was like real black. [She] didn't remember anything after that. [She] was seeing stars." *Id.* at 81. She also stated that Thomas's hand caused the scratches on her face. *Id.* at 78. K.C. agreed that the bruising on her neck shown in a photograph was not there before Thomas strangled her. *Id.* at 81.

The prosecution also presented the testimony of Detective Gerald Davis and admitted a videorecording of Detective Davis's forensic interview of K.C. On cross-examination, Thomas elicited Detective Davis's belief that Thomas's interaction with K.C. constituted "statutory rape":

> [Defense Counsel]: Do you believe that you uncovered information about sexual abuse?
>
> [Detective Davis]: In my 24 years['] experience as a child abuse investigator, yes. I believe there was a sexual relationship going on between your client –

[Defense Counsel]: I didn't ask you that. I asked you, the word I said was sexual abuse.

[Detective Davis]: Yes. She was 15 years old, that would be sexual abuse. It would be statutory rape.

N.T., Mar. 14, 2023, at 157.

A jury convicted Thomas of strangulation and simple assault—causing bodily injury. The trial court sentenced him to five to 10 years' incarceration. Thomas appealed.[3]

Thomas raises the following issues:

I) Did the trial court abuse its discretion by allowing the prosecutor to treat the complaining witness, K.C., as a hostile witness and ask her leading questions on direct examination?

II) Did the trial court abuse its discretion by allowing the Commonwealth to present evidence to the jury regarding the age of K.C., when her age had no relevance to the charges and when any probative value was outweighed by the potential of unfair prejudice?

111) Was the evidence insufficient to support the charge of strangulation where the Commonwealth failed to prove that [Thomas] "knowingly" or "intentionally" impeded the breathing or circulation of the blood of K.C.?

Thomas's Br. at 3 (answers below omitted).

Thomas first argues the trial court abused its discretion when it allowed the Commonwealth to treat K.C. as a hostile witness under Pennsylvania Rule

_____

[3] Thomas filed a timely *pro se* appeal. He also filed a *pro se* concise statement of errors complained of on appeal, and the trial court issued a Pa.R.A.P. 1925(a) opinion. New counsel from the Chester County Public Defender's Office entered an appearance and filed a motion for remand. This Court granted the application and remanded to the trial court. Counsel filed a supplemental 1925(b) statement, and the trial court issued a supplemental opinion.

of Evidence 611. He maintains that K.C. was reluctant, but did not refuse to testify, stating that when she learned of the possibility of a material witness warrant, K.C. voluntarily came to court. He claims that although K.C. "could not remember some details, which related to an incident that had occurred three and one-half years prior, she was open to reviewing her prior statements to the police." *Id.* at 17. Thomas maintains that K.C. expressed unhappiness about testifying, but willingly appeared in court, did not recant prior statements that she had been choked, and did not surprise the Commonwealth. Thomas claims that although K.C. appeared frustrated with the way the questions were asked, she responded to them and testified that Thomas choked her. He argues that after granted permission to treat K.C. as a hostile witness, the Commonwealth asked leading questions about topics central to the charges.

A trial court has "wide discretion in controlling the use of leading questions," and this Court will not reverse "on appeal absent an abuse of discretion." ***Commonwealth v. Bibbs***, 970 A.2d 440, 453 (Pa.Super. 2009) (quoting ***Commonwealth v. Lambert***, 765 A.2d 306, 360 (Pa.Super. 2000)).

Generally, under Rule 611, a party should not use leading questions on direct examination unless the witness is a hostile witness, an adverse party, or a witness identified with an adverse party:

> **(c) Leading Questions.** Leading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

> (1) on cross-examination; and
>
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. A witness so examined should usually be interrogated by all other parties as to whom the witness is not hostile or adverse as if under redirect examination.

Pa.R.Evid. 611(c).

A party may properly be allowed to treat a witness as hostile if the witness "evidenced [an] overt unwillingness to testify and . . . belligerence on the stand." **Bibbs**, 970 A.2d at 453. In other words, a "hostile" witness is one "who shows himself or herself so adverse to answering questions, whatever the source of the antagonism, that leading questions may be used to press the questions home." **Lambert**, 765 A.2d at 357 n.42 (quoting **Rodriguez v. Banco Cent. Corp.**, 990 F.2d 7, 12-13 (1st Cir. 1993)).

Here, the trial court concluded:

> On March 14, 2023, before the trial got underway for the day, the Commonwealth sought a [m]aterial [w]itness [w]arrant for K.C. The trial court granted the petition. K.C. [arrived at] court. The Commonwealth called her as its first witness. Before taking the stand, K.C. stated in open court that she did not want to testify. She even initially refused to go to the witness stand. Ultimately, she took the stand and was sworn in. However, she continued to try to evade answering the Commonwealth's questions. She responded to the prosecutor's questions with her own questions instead of simply answering the questions put to her. She testified that she did not want to be on the stand and that the Commonwealth told her if she did not testify, she would be locked up. Moreover, under direct examination, K.C. claimed that she did not really remember the incident.
>
> After a recess, the Commonwealth sought permission to treat K.C. as a hostile witness. The trial court granted the Commonwealth's request pursuant to Pa. R. E. 611(c)(2) as

- 8 -

the court determined that a foundation had been properly established.

The record clearly establishes that the victim was a reluctant witness. Pages 42-84 of the March 14, 2023 transcript confirms that K.C. was a hostile witness for the Commonwealth. Moreover, the court issued a material witness warrant for her because she was unwilling to voluntarily come into testify despite a subpoena being issued for her.

When K.C. was called to the witness stand, she blurted out that she did not want to testify before she event got to the witness stand. Upon being sworn in, her answers were evasive at best. She frequently answered the Commonwealth's questions with her own questions. She repeatedly claimed that she did not recall events material to the case including her interview with the police. She also testified that some of her prior statements to law enforcement were untrue.

. . .

Like the [a]ppellant in **Bibbs**, the victim in the case *sub judice* was wholly uncooperative and argumentative with the Commonwealth while she was testifying. As noted above, K.C. refused to testify, causing the Commonwealth to petition for a Material Witness Warrant. Additionally, once she was on the witness stand, K.C. was often evasive in her responses to the Prosecutor's questions and she gave conflicting responses including claiming that she did not know anything about the choking incident, the lead charge in this matter. The hostile witness designation for K.C. comports with the case law as well as the standard set forth in Pa.R.E. 611(c)(2). The record clearly indicates that trial court did not abuse its discretion in permitting the Commonwealth to treat K.C. as a hostile witness.

Trial Ct. Op. at 4-5, 6-7 (citations to record omitted).

The trial court did not abuse its discretion in allowing the Commonwealth

to treat K.C. as a hostile witness. K.C. repeatedly stated she did not want to

testify and was uncooperative on the stand, refusing to answer questions and repeatedly claiming she did not remember events.

In his next issue, Thomas maintains the court abused its discretion by allowing the Commonwealth to elicit information regarding K.C.'s age. He reasons K.C.'s age was not an element of strangulation or simple assault and, by introducing evidence of her age, "the jury heard evidence of other possible offenses, such as statutory rape." Thomas's Br. at 17. He argues the danger of unfair prejudice outweighed any probative value. He points out that K.C.'s forensic interview was played for the jury, where she discussed that she and Thomas had oral sex and that they had discussed how their age difference was a problem. He further points out that Detective Davis testified that the information learned during the interview could be evidence of statutory rape.

He further claims that the Commonwealth's argument that K.C. was truant because she was spending time with Thomas could be evidence of the crime of corruption of minors. He maintains that "[i]t is very likely that evidence concerning the sexual relationship between K.C. and Mr. Thomas diverted the jury's attention away from considering the evidence impartially or may have provided an improper basis for its decision." *Id.* at 27. He further argues there was a danger of unfair prejudice, as he alleges the Commonwealth used K.C.'s age to garner sympathy with the jury.

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard. **Commonwealth v. Hairston**, 84 A.3d 657, 664 (Pa. 2014). "An abuse of discretion may not be found merely because an

- 10 -

appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.* at 664-65.

"The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.Evid. 403.

The trial court concluded the evidence of K.C.'s age was relevant biographical evidence that was not unduly prejudicial:

> Allowing testimony of K.C.'s age was permissible relevant evidence. Further, although this court allowed the Commonwealth to inquire about K.C.'s age, the trial court also instructed the Commonwealth to not make the trial strictly about K.C.'s age. While the Commonwealth elicited evidence of K.C.'s age during the two and a half-day trial, there was no undue prejudice to [Thomas].
>
> Furthermore, should the Superior Court determine that the trial court erred by allowing information about K.C.'s age into evidence, then it was harmless error as the prejudicial effect was *de minimis*. "Harmless error" exists if the Commonwealth proves that (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. ***Commonwealth v. Frein***, 206 A.3d 1049 (Pa.2019) (internal citations omitted). Based on the overwhelming evidence presented at trial, should the Superior Court determine that this court erred in allowing the age of the victim to be discussed, it was harmless error because there was overwhelming evidence of the [Thomas]'s guilt.

Trial Ct. Op. at 7-9.

The trial court did not abuse its discretion in denying Thomas's motion *in limine*. Evidence of the victim's biographical information, where the court permitted additional objections if the Commonwealth made the trial about K.C.'s age, was relevant and not unduly prejudicial. Moreover, Thomas did not object to admission of the forensic interview, and it was Thomas's cross-examination of Detective Davis's that elicited the discussion of statutory rape. In any event, we also agree with the trial court that, if the court did err in admitting the evidence of K.C.'s age, the error would be harmless, as the evidence admitted at trial overwhelming established Thomas's guilt.

In the final issue, Thomas argues the Commonwealth introduced insufficient evidence of strangulation, as it failed to prove he knowingly or intentionally impeded the breathing or circulation of K.C.'s blood. Thomas notes that K.C. did not testify about any threats made by Thomas and that she testified that she blacked out briefly and still was standing when she came to her senses.

We review a sufficiency claim pursuant to the following standard:

> When reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. This standard applies equally where the Commonwealth's evidence is circumstantial.

> In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. The fact-finder is free to believe all, part, or none of the evidence.

*Commonwealth v. Clemens*, 242 A.3d 659, 664-65 (Pa.Super. 2020) (cleaned up).

A person is guilty of strangulation if "the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by . . . applying pressure to the throat or neck." 18 Pa.C.S.A. § 2718(a)(1). "The Crimes Code does not require that the victim be unable to breathe to prove strangulation or require proof of a particular level of obstruction of the victim's breathing to prove strangulation." *Commonwealth v. Weitzel*, 304 A.3d 1219, 1225 (Pa.Super. 2023). "[T]he Commonwealth need only prove that the defendant hindered or obstructed the victim's breathing." *Id.*

The trial court found the evidence sufficient to support the strangulation conviction:

> K.C. testified at length about being choked by the hands of [Thomas]. She explained that she blacked out from it. Moreover, K.C. also testified that while she was being choked by [Thomas] she ". . . [saw] everything black . . [l]ike a heat flash or something" and she did not "remember anything after that . . . seeing stars."
>
> Although physical injury is not an element of a strangulation offense, the Commonwealth introduced into evidence pictures that K.C. indicated were fair and accurate depictions of the right side of her face and neck on September 11, 2019. K.C. testified that the pictures showed

scratches on the right side of her face. Although K.C. initially stated she did not know what caused the scratches, she later testified these the scratches were caused by [Thomas's] hands.

Furthermore, K.C. indicated that the bruising around her neck and the scratches on her face, which were reflected in C-1 and C-2, were not on her neck and face before [Thomas] strangled [her]. Finally, Officer Faddis testified that the injuries reflected in [the photographs] were the injuries she observed of K.C. on September 11, 2019.

Upon review, this evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient for the jury to find [Thomas] impeded the breathing of [K.C.] by applying pressure to the throat or neck of K.C. It is well settled that "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." **Commonwealth v. Gilliam**, 249 A.3d 257, 268 (Pa.Super. 2021)(*citing* **Commonwealth v. Crosley**, 180 A.3d 761, 768 (Pa.Super. 2018)(citation omitted)). Accordingly, the evidence presented was sufficient to sustain the convictions the charge of strangulation.

Trial Ct. Op. at 11-12 (citations to record omitted).

We agree that the evidence was sufficient. The Commonwealth presented sufficient evidence that Thomas knowingly or intentionally impeded K.C.'s breathing or blood circulation through the pictures of K.C.'s injuries and through her testimony, including that she blacked out while Thomas's hands were on her throat.

Judgment of sentence affirmed.

Judge Lane joins the memorandum.

Judge Stabile concurs in the result.

- 14 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/31/2025</u>