J-S17028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEITH MICHAEL WILLIAMS | |
| Appellant | No. 1990 MDA 2018 |

Appeal from the Judgment of Sentence November 6, 2018
In the Court of Common Pleas of Luzerne County
Criminal Division at No: CP-40-CR-0001099-2017

BEFORE: PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED AUGUST 25, 2020**

Appellant, Keith Michael Williams, appeals his judgment of sentence of 54—108 months' imprisonment for voluntary manslaughter, 18 Pa.C.S.A. § 2503. Appellant argues that the evidence was insufficient to demonstrate that Appellant did not act in justifiable self-defense or possess a reasonable belief that he was in immediate and imminent danger of death or serious bodily injury. We affirm.

The following evidence was adduced during trial. Appellant lived with his girlfriend, Deidre DePiero, in a mobile home. Deidre worked as a certified nurse's assistant, and Appellant had been her boyfriend for two and a half years. Appellant had a limp, needed a cane to get around, and suffered from pain in his feet and legs. Despite taking a variety of medications, he sometimes had trouble doing chores around the house. Tr. 195-99.

On the night of January 11, 2017, DiPiero received calls from the victim, Brock Earnest, whom DiPiero had met at a psychiatric hospital in October 2016. DiPiero had been in the psychiatric hospital suffering from anxiety and depression, while Earnest was there due to a problem with alcohol. DiPiero characterized their relationship as friendly, but nothing more. During the calls, Earnest told DiPiero that he was dying from mouth cancer and asked her to pick him up. Appellant initially objected to picking Earnest up and complained that DiPiero did not know Earnest very well. Ultimately, though, Appellant agreed to drive DiPiero to meet Earnest. *Id.* at 206-15, 226-28, 419-20.

After they picked Earnest up, he was rude, intoxicated and angry about his cancer diagnosis. He insisted on getting a thirty pack of beer and cigarettes and bragged about being tough, claiming that he wanted to beat somebody up before he died. Earnest tried to hold DiPiero's hand while Appellant was sitting next to her in the passenger seat, which DiPiero claimed made her feel "a little weird." *Id.* at 211-15, 221-23, 409-12.

The group returned to Appellant's mobile home. Appellant and Earnest briefly went outside and shot guns recreationally, and they appeared to be getting along. After returning inside, however, Appellant and Earnest began wrestling in the living room, and Earnest started pushing and punching Appellant. Earnest was larger and fitter than Appellant and was winning the fight. DiPiero screamed at them to stop and stepped between them, and

Earnest accidentally hit her. The fight ended, and Appellant walked back into his bedroom. Earnest did not pursue Appellant into the bedroom. *Id.* at 223-24, 231-37, 409-11, 413-16.

When the two men separated, DiPiero believed that the fight was over. Earnest would not move from the couch or reply when DiPiero asked him what the fight had been about. Instead, Earnest sat on the couch silently, looking sad and confused. An autopsy would show that he had a BAC of .262%. *Id.* at 235-37.

Humiliated by the fight, Appellant walked down the hallway to his bedroom, retrieved a shotgun and loaded it. Appellant emerged from the bedroom while Earnest continued to sit silently on the couch. Appellant shot Earnest twice where he sat, and Earnest fell onto the floor and died shortly thereafter. DiPiero testified that Earnest had been unarmed and seated; she never saw him holding a knife, and had never felt any reason to fear for her own safety around him. DiPiero called 911. She described Appellant's expression as "stunned [...] like a trance". *Id.* at 229-32, 235-39, 259-61, 413-16.

Appellant told DiPiero that he had shot Earnest because he believed Earnest was going to kill him. He claimed at trial that he believed Earnest had a knife, despite DiPiero's testimony that there was no knife in the victim's hands. Appellant claimed that Earnest was not silent or sitting down on the couch when Appellant shot him. According to Appellant, Earnest was rising

up from the couch, and he said to Appellant, "Are you ready to go now?" *Id.* at 259-61, 417-20.

The police questioned Appellant and took photographs of his injuries, which consisted of a small scratch on his lower back and another on his ear. The police interviewer did not consider any of Appellant's injuries to be serious. The interviewer described Appellant as alert and coherent and reported that Appellant declined any medical treatment. *Id.* at 131-32, 153, 337-40.

Appellant raises two issues in this appeal:

1. Did the Commonwealth prove, beyond a reasonable doubt, that the Appellant did not act in justifiable self-defense and/or that he did not possess a reasonable belief that he was in immediate and imminent danger of death or serious bodily injury?

2. Did the Commonwealth prove, beyond a reasonable doubt, that the Appellant's belief that he was in danger of immediate and/or imminent danger of death or serious bodily injury was unreasonable or mistaken?

Appellant's Brief at 2. We analyze these issues together, because they both challenge whether the evidence was sufficient to disprove Appellant's claim of self-defense.

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa.

2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to accord to each witness's testimony and to believe all, part or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

The voluntary manslaughter statute, 18 Pa.C.S.A. § 2503, prescribes:

**(a) General rule.--**A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

**(b) Unreasonable belief killing justifiable.--**A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

***Id.*** Voluntary manslaughter is a first-degree felony. 18 Pa.C.S.A. § 2503(c).

During trial, Appellant invoked the doctrine of self-defense in response to the charge of voluntary manslaughter. The statute governing self-defense, 18 Pa.C.S.A. § 505, provides: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). Section 505 further provides:

> The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
>
> (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
>
> (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(b)(2.1).

When the defendant claims self-defense in response to a charge of voluntary manslaughter, the burden is on the Commonwealth to disprove the defendant's claim beyond a reasonable doubt. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1124 (Pa. 2012). To successfully claim self-defense, the defendant must meet three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that the use of deadly force was necessary to prevent such harm;

(2) the defendant did not provoke the incident which resulted in the victim's death; and (3) the defendant did not violate any duty to retreat. ***Commonwealth v. Patterson***, 180 A.3d 1217, 1231 (Pa. Super. 2018) (citing ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012)).

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to disprove Appellant's claim of self-defense. The trial court reasoned:

> In arguing at trial that he acted in self-defense, [Appellant] sought to persuade the jury that the victim's physical appearance, behavior, and demeanor leading up to the shooting caused [Appellant] to believe that he was in imminent danger of death or serious bodily injury such that it was necessary to use deadly force against the victim, and additionally, that such belief was reasonable. The Commonwealth countered that not only was such a belief not reasonable, but was, in fact, not even held by [Appellant], who instead only asserted it after the fact, as a way to avoid responsibility for his actions.
>
> Clearly, the jury, as fact finder, was free to believe whatever portions of the evidence it found credible. Viewed as a whole, the evidence presented by the Commonwealth fully supports the jury's finding that the Commonwealth met its burden of proving that the defendant was not acting in self-defense when he shot and killed the victim, either through evidence that [Appellant] did not actually believe that he was in imminent danger of death or serious bodily injury, or through evidence that if such a belief was held, it was not a reasonable belief. As such, [Appellant] is not entitled to appellate relief on this issue. Of particular support for these conclusions was the evidence presented that the altercation between the victim and [Appellant] had ended prior to the shooting; that the victim was seated, and remained seated, after the altercation and prior to being shot; that [Appellant] was able to remove himself from the victim without being followed, and secure himself in another room; that [Appellant] nonetheless chose to return to the victim; and that the victim was unarmed and several feet away from [Appellant] when [Appellant] shot him.

Trial Court Opinion, 6/28/19, at 17-18. We agree with the trial court and conclude that the evidence was sufficient to disprove Appellant's claim of self-defense beyond a reasonable doubt.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/25/2020