J-S07032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT ISSAC SAINTKITTS | : | |
| | : | |
| Appellant | : | No. 489 MDA 2023 |

Appeal from the Judgment of Sentence Entered December 21, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001303-2021

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: OCTOBER 16, 2024**

Appellant Robert Isaac Saintkitts, appeals from the judgment of sentence imposed by the Court of Common Pleas of Berks County following jury convictions of murder of the first degree and related offenses. Appellant raises four claims in this appeal. He argues that the evidence was insufficient, his convictions were contrary to the weight of the evidence and the trial court's rulings admitting evidence of his communications with a witness were erroneous. After careful review, we affirm the judgment of sentence.

The Honorable Patrick T. Barrett sat as the trial court and summarized the evidence from the trial, as follows:

> Gangs in Reading; the victim's ironic foreshadowing tattoo of "live by the gun, die by the gun;" a hastily done cleanup of the murder scene; a script to influence witness testimony; a specific cartoon character jacket linked to the Appellant; and a 17-year-old murder

---

[*] Retired Senior Judge assigned to the Superior Court.

victim. These were the key details presented during the weeklong jury trial held November 28, 2022, through December 2, 2022.

On February 23, 2021, Appellant went to the house located at 1026 Buttonwood Street in the City of Reading at around 7:30/8:00pm. Alexander Peguero-Severino resided at that address and let Appellant in the house via the side door. Appellant came in the house carrying a black pistol. Within minutes of entering, Appellant fired the pistol in the house towards the victim, Francisco Soto, as he was laying on the couch. The victim got up and covered his face and there were trickles of blood on the floor near the couch. The victim then ran out of the house and onto the street and Appellant followed him. Video evidence introduced by the Commonwealth showed Appellant chasing the victim. Appellant caught up to the victim at the intersection of 10th and Buttonwood where Appellant fatally shot the victim.

The Commonwealth presented evidence in the form of videos, maps, fingerprints, and witness identification. These witnesses included the following:

• Raymond Acevedo, a patrol division officer with the Reading Police Department;

• Jesus Avalos-Borroso, a neighbor on Buttonwood Street who heard fighting and shots;

• Shayka DelRio-Gonzalez, the victim's mother and a resident of 1026 Buttonwood;

• Andrew Condon-Thomas, a former patrol officer and field training officer with Reading Police Department;

• Miguel Rodriguez-Moret, a co-defendant to Appellant and resident of 1026 Buttonwood who witnessed the shooting inside, helped clean up the scene, and concealed evidence;

• Anne Pletcher, a major evidence technician with Reading Police Department;

• Wilfredo Ramirez, a major evidence technician with Reading Police Department;

• Todd Kegerise, a deputy investigator with the Berks County Coroner;

• Steve Valdez, a criminal investigator with the Reading Police Department and affiant in this case;

• Olga Soto, the Appellant's daughter's grandmother;

• Dr. Supriya Kuruvilla, a forensic pathologist and director for medical autopsies for Tower Health;

• John Bradley Hoy, a firearms expert at Berks County Forensic Services;

• Richard Fitzgerald, an employee of Viapath Technologies which supplies phone services to Berks County Prison;

• Michael Johnson, head of security and a correctional officer with Berks County Prison;

• Audrey Batista, the Appellant's sister; and

• Alexander Peguero-Severino, the co-defendant in this matter and a resident of 1026 Buttonwood.

Trial Court Opinion, 2-3.

An arrest warrant for Appellant was issued on March 5, 2021, and he was arrested in New York City on March 16, 2021. On May 25, 2022, a hearing was held on Appellant's Motion in Limine to exclude a letter allegedly written by Appellant and delivered to the cooperating co-defendant Alexander Peguero-Severino through a prison inmate to influence him to not inculpate Appellant at trial. Finding the letter relevant and sufficiently authenticated, the trial court denied Appellant's motion by written order the following day. N.T. 5/25/22 – Motion, 3-19; N.T. 11/30/22 – Trial, 596-597; Order, 5/26/22, 1-2

Trial was scheduled to begin the week of May 31, 2022. Events commencing in the late afternoon of May 26, 2022, became the subject of two Motions in Limine filed by the Commonwealth to permit the introduction of

recorded prison telephone calls and a script found in the cell of an inmate associate of Appellant. In sum, Appellant called his sister from a Berks County Correctional Facility phone and, among other things, told her that another person would call her to give her the "full lay down." Shortly thereafter, Justin Santiago, another Berks County prisoner, called Appellant's sister and read from a "script" purporting to be the testimony she should give at Appellant's trial. Appellant called his sister again that evening. On May 27, 2022, correctional officers found the "script," allegedly in Appellant's writing, under the mattress in Santiago's cell. On May 31, 2022, the Commonwealth notified the court and defense of its intent to introduce this evidence and, as a result, trial was continued. On August 29 and 30, 2022, the court held an evidentiary hearing with five witnesses on the Commonwealth's Motions in Limine to introduce the recorded phone calls and the handwritten "script" at trial. Finding the evidence relevant and sufficiently authenticated, the court granted the Commonwealth's motions by written order on September 7, 2022. Commonwealth's Motion for Continuance, 7/15/22, ¶¶ 2-12; N.T. 8/29/22 – Motion, 5-51; N.T. 8/30/22 - Motion, 29-45; Order, 9/7/22, 1-2.

Appellant's trial commenced with *voir dire* on November 28, 2022. On December 2, 2022, the jury returned a verdict finding Appellant guilty of murder of the first degree, conspiracy to commit murder of the first degree, aggravated assault, conspiracy to commit aggravated assault, aggravated assault with a deadly weapon, conspiracy to commit aggravated assault with a deadly weapon, possessing an instrument of crime, conspiracy to commit

possessing an instrument of crime, recklessly endangering another person, conspiracy to commit recklessly endangering another person, and firearms not to be carried without a license.[1] On December 21, 2022, the court imposed an aggregate term of life imprisonment followed by 10 to 20 years' incarceration followed by five years' probation.[2]

Appellant filed timely post-sentence motions on Tuesday, January 3, 2023, raising, *inter alia*, a challenge to the weight of the evidence. The trial court ordered a hearing, which was held on February 8, 2023. The court denied the post-sentence motions by written order dated February 23, 2023, which was entered on the docket on February 27, 2023.

Appellant filed a timely Notice of Appeal on March 28, 2023. The trial court ordered Appellant to file a Concise Statement of Errors Complained of on Appeal. Appellant complied, alleging the evidence was insufficient, his convictions were contrary to the weight of the evidence and the trial court erred in granting the Commonwealth's pre-trial motions to admit the prison calls and "script."

Appellant raises four questions presented in his brief, as follows:

_____

[1] 18 Pa.C.S. §§ 903(a)(1), 907(a) 2502(a), 2702(a)(1), 2702(a)(4), 2705 and 6106(a)(1).

[2] The specific consecutive terms of sentence were: life imprisonment for murder in the first degree (Count 1); eight to 16 years' imprisonment for conspiracy to commit murder in the first degree (Count 2); two to four years' imprisonment for carrying a firearm without a license (Count 15); and five years' probation for possessing an instrument of crime (Count 9). The remaining convictions were deemed to merge for sentencing purposes.

1. Whether the evidence was insufficient to support the convictions?

2. Whether the verdicts were against the weight of the evidence?

3. Whether the trial court […] reversibly erred in admitting evidence of phone calls between Appellant, another inmate, and Appellant's sister?

4. Whether the trial court reversibly erred in admitting a script of testimony to be provided to a witness by Appellant?

Appellant's Brief, 4.

When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id*. It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id*.

Appellant's sufficiency challenge admits that the evidence for murder in the first degree was sufficient. Appellant's Brief, 37 ("the multiple gunshots, including a fatal gunshot to the head, plainly satisfy the intent requirement for a first degree murder conviction"). He also does not challenge the evidence

for conspiracy to commit murder in the first degree.[3] Instead, Appellant argues that the evidence was not sufficient to prove he was the shooter. *Id*., 37, 39.

There was ample evidence to prove beyond a reasonable doubt that Appellant shot, then pursued, then shot the victim fatally. Two persons, Rodriguez-Moret and Peguero-Severino, both of whom knew Appellant,

---

[3] As the trial court ruled, the evidence was sufficient to prove the elements of both murder in the first degree and criminal conspiracy to commit murder in the first degree. The victim was shot twice in the head. The first time was not fatal and the wound path was consistent with him being struck while lying on the couch in the living room where blood splatter and the victim's own gun were found, and entirely consistent with the testimony of Rodriguez-Moret and Peguero-Severino that Appellant shot the victim with a nine mm semi-automatic shortly after being allowed in the house by Peguero-Severino. N.T. 11/29/22 – Trial, 167-178, 282-288; N.T. 12/1/22 – Trial, 618-624, 724-726, 737-740. Appellant then pursued the victim onto Buttonwood Street to the intersection with 10th Streets, where he fired two more times, with the fatal shot being fired from less than two feet away, striking the victim in the left side of his forehead. N.T. 11/29/22 – Trial, 183-187, 288-290, 292-294, 296-298; N.T. 12/1/22 – Trial, 609, 613-618, 654-656, 740-743. Plainly, the evidence proved an intent to kill the victim. *See Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003) (an accused's intent "may be proven by direct or circumstantial evidence"). As for criminal conspiracy, Peguero-Severino testified to being close friends with Appellant and having spent the afternoon with him, Appellant told him that he believed the victim had tried to rob him and was angry about it, Peguero-Severino told Appellant the victim was at the house before Appellant came over, and arranged to open the door of the house for Appellant so that Appellant would not have to knock. N.T. 12/1/22 – Trial, 717-722, 728-731, 733-737. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*) (elements of conspiracy are an agreement to commit or aid an unlawful act and an overt act done in furtherance of conspiracy, provable by such factors as an association with conspirator, knowledge of the crime, presence at the crime and participation in the object of the conspiracy); *Commonwealth v. Munson*, 261 A.3d 530, 542 (Pa. Super. 2021) (similar).

identified him as the shooter who came through the door and opened fire on the victim, then pursued the victim out of the house and onto Buttonwood Street. N.T. 11/29/22 – Trial, 284-289, 301; N.T. 12/1/22 – Trial, 711-712, 731, 737-740; Ex. C-32. A third person who knew Appellant because he was the father of her granddaughter, had seen him earlier the day of the murder wearing the unique jacket with cartoon characters on it and identified him on still photographs taken from video surveillance cameras that depicted Appellant. N.T. 11/30/22 – Trial, 575-579, 581; Ex. C-37. Peguero-Severino also identified defendant as the person captured in the still photographs pursuing the victim on Buttonwood Street, and confirmed he was wearing the unique jacket with cartoon characters on it at the time. N.T. 12/1/22 – Trial, 743-748; Ex. C-32, C-36, and C-37. Rodriguez-Moret similarly identified Appellant as the person in the still photos wearing the unique jacket with cartoon characters on it. N.T. 11/29/22 – Trial, 285, 289-290, 293; Ex. C-32. Rodriguez-Moret testified that after hearing multiple gunshots on the street, Appellant returned to the house and when asked what had happened stated, "it doesn't matter, he's dead now." *Id*., 298-299. Rodriguez-Moret also testified that he mopped up the blood at Peguero-Severino's instruction, and while doing so, pocketed two fired cartridge casings he found. *Id*., 303-305. Another witness saw the gunman who fatally shot the victim wearing the unique jacket with cartoon characters on it return to the Buttonwood Street house. N.T. 11/29/22 – Trial, 204-206. Expert ballistics testimony confirmed that the two fired shell casings found inside the house were fired by the same

gun that fired the shell casings found near the victim's body in the street. N.T. 12/1/22 – Trial, 649, 654-656.

In every criminal case, "[p]roof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction." ***Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973). "[T]the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence." ***Commonwealth v. Santiago***, 980 A.2d 659, 662 (Pa. Super. 2009).

In ***Santiago***, this Court found the evidence sufficient to prove Santiago's identity as the person who shot and killed the victim where it demonstrated that "in the early morning hours of the day in question, the victim and Appellant were in the victim's home and had an argument about a gun," which Appellant wanted to hold but the victim refused to allow. ***Id***. at 663. Then, at about 8:15 a.m., a neighbor across the street heard two bangs that sounded like firecrackers, and saw Appellant walking out of the victim's home, where the "victim was discovered after 11:00 a.m., on the couch of his home, with a gunshot wound to his head." ***Id***. In contrast, here, there were two positive identifications of Appellant as the shooter, and a third identification of him pursuing the victim immediately prior to the fatal shot. In addition, Appellant used the same gun to shoot the victim in the house in front of two witnesses, then pursued him and shot at the victim at least two more times in the street and upon his return to the house, announced the victim was dead. This is far more compelling corroboration of the witness

identifications than existed in **Santiago**. Therefore, the evidence was sufficient to prove beyond a reasonable doubt that Appellant killed the victim.

Appellant also argues that the evidence was insufficient to sustain his conviction of violating the Uniform Firearms Act under 18 Pa.C.S. § 6106(a)(1) by carrying a concealed firearm on the street, because there was no testimony that he concealed the firearm used to shoot the victim or that it was a "firearm" under the statute with "a barrel length of less than 15 inches." Appellant's Brief, 40. A firearm is concealed under the statute "when, viewed in the totality of the circumstances, [a person] carries the firearm in such a manner as to hide the firearm from ordinary observation; absolute invisibility to others is not required." **Commonwealth v. Montgomery**, 234 A.3d 523, 536 (Pa. 2020). There was testimony that Appellant concealed the semi-automatic handgun. Peguero-Severino testified that Appellant carried the gun in his hand when he ran out of the house in pursuit of the victim, but when he returned to the house the handgun was no longer visible. N.T. 12/1/22 – Trial, 749. Later that night, however, Peguero-Severino saw the gun again at Appellant's sister's home. **Id**. Viewing this testimony in the light most favorable to the Commonwealth, as we must, it is sufficient to prove Appellant concealed the handgun on his person when he walked on Buttonwood Street back to the house after killing the victim.

A "firearm" is defined as, *inter alia*, "[a]ny pistol or revolver with a barrel length less than 15 inches." 18 Pa.C.S. § 6102. The Commonwealth may establish the length of a particular weapon by purely circumstantial evidence.

*See Commonwealth v. Robinson*, 817 A.2d 1153, 1162 (2003) (holding that evidence was sufficient to sustain Uniform Firearms Act conviction where the victim "testified that all three attackers possessed handguns. This is all that is necessary"); *Commonwealth v. Rozplochi*, 561 A.2d 25, 31 (Pa. Super. 1989) (concluding that there was sufficient evidence to establish the length of a firearm's barrel from testimony and estimations of size provided by an eyewitness, irrespective of whether the gun was entered into evidence); *Commonwealth v. Jennings*, 427 A.2d 231, 235 (Pa. Super. 1981) (holding jury is permitted to "infer" the length of a weapon by first-hand observation).

There is circumstantial evidence here from which the jury could draw a reasonable inference of barrel length. Rodriguez-Moret described the gun Appellant had as a "pistol" and both he and Peguero-Severino testified that Appellant fired at the victim holding the gun in one hand. N.T. 11/29/22 – Trial, 286, 297; N.T. 12/1/22 – Trial, 737. There was a still photograph, viewed by the jury, depicting Appellant holding the gun in one hand. Ex. C-32. Though the photograph is blurry, Appellant is holding a handgun that appears to have a normal-sized barrel. *Id*. The jury thus had the opportunity to estimate the size of the barrel for itself. In addition, the caliber of the bullets fired from the gun by Appellant were nine mm, N.T. 12/1/22 – Trial, 648, 651, 656, consistent with a typical-sized handgun, and the firearms expert testified that he was "able to come to the opinion that [the gun used to kill the victim] was a semi-automatic firearm." *Id.*, 650. This Court has held that expert testimony that a typical handgun along with the caliber of ammunition was

used may be sufficient to prove barrel length. ***Commonwealth v. Ray***, 751 A.2d 233, 236 (Pa. Super. 2000). Moreover, the handgun was small enough for Appellant to conceal in his clothing after the shooting, and also after he left the house to return to his sister's home, as depicted by surveillance video. Therefore, the evidence viewed in the light most favorable to the Commonwealth was sufficient to support the jury's determination that the barrel length of the handgun held, concealed and used by Appellant was less than 15 inches.

Appellant's challenge to the weight of the evidence reargues the same grounds: his identity as the shooter and the concealment and barrel length of the handgun. However, claims challenging the weight of the evidence and sufficiency of the evidence are clearly distinct. ***See Commonwealth v. Widmer***, 744 A.2d 745 (Pa. 2000) (discussing the distinctions between a claim challenging the sufficiency of the evidence and a claim that the verdict is against the weight of the evidence). "A true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Charlton***, 902 A.2d 554, 561 (Pa. Super. 2006) (quoting ***Commonwealth v. Galindes***, 786 A.2d 1004, 1013 (Pa. Super. 2001)).

Thus, our standard of review for a weight claim differs greatly from that for a sufficiency claim. In a post-sentence motion, a weight claim "is addressed to the discretion of the trial court." ***Widmer***, 744 A.2d at 751. "In order for a defendant to prevail … 'the evidence must be so tenuous, vague and uncertain

- 12 -

that the verdict shocks the conscience of the court.'" ***Commonwealth v. Talbert***, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003)). A trial court's denial of a motion "based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 880 (Pa. 2008). "An appellate court's standard of review … is distinct from the standard of review applied by the trial court." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013). It "is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Id***. (quoting ***Widmer***, 744 A.2d at 753). This Court must limit review to "whether the trial court abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on partiality, prejudice, bias, or ill-will." ***Id.*** at 1056.

Here, the trial court denied Appellant's post-sentence motion, which included a rote assertion that his convictions were contrary to the weight of the evidence without any of the specificity that he provides on appeal. Explaining its ruling, the trial court wrote:

> We disagree with Appellant's allegation that the evidence presented at his trial was against the weight of the evidence. … Instantly, the jury heard the testimony and evidence presented during trial and, as the finder of fact, was able to resolve any conflicts and make determinations of credibility as to the weight it afforded such testimony. This court, who likewise viewed the testimony and evidence presented during trial, did not find that the verdict of the jury shocked our sense of justice. Appellant's arguments are unavailing, and his appeal should be dismissed regarding this argument.

Trial Court Opinion, 14-15.

Although we would prefer more specificity from the trial court, given the broad brush of Appellant's post-sentence sufficiency and weight claims it is understandable that the court focused on the general credibility of the Commonwealth's witnesses rather than the more specific claims raised on appeal. Having reviewed the record ourselves, we find no abuse of discretion by the trial court. **See Commonwealth v. Rice**, 902 A.2d 542, 547 (Pa. Super. 2006) (where trial court's "conclusions are logical and supported by evidence of record" then it "did not commit a palpable abuse of discretion" by rejecting a weight claim). As explained above in response to Appellant's sufficiency argument, there was ample evidence, direct, circumstantial, photographic and corroborative to support the jury's findings that Appellant was the shooter who killed the victim and that the handgun he carried was both concealed and met the statutory definition of a "firearm."

Moreover, Appellant's reliance on discrepancies among the many witnesses, Appellant's Brief, 42-43, essentially asks this Court to substitute our evaluation of the evidence for that of both the jury and the trial court, which we cannot do. It would be reversible error for this Court to "step[…] into the shoes of the trial judge and revisit[…] the underlying question of whether the verdict was against the weight of the evidence." **Clay**, 64 A.3d at 1056. **See also Commonwealth v. Chine**, 40 A.3d 1239, 1244 (Pa. Super. 2012) ("[a]s it is not the role of an appellate court to reweigh the evidence, we will not disturb the jury's credibility determinations"). Based on our review, all the

alleged inconsistencies and contradictions were brought to the attention of the jury, which as the fact finder was the final arbiter of credibility and weight. *See Commonwealth v. Small*, 741 A.2d 666, 673 (Pa. 1999) (where "all of the matters complained of by appellant … were issues argued by appellant's counsel during trial and were properly weighed and rejected by the jury before it reached its verdict" then appellate weight claim fails).

Appellant's last two claims challenge the trial court's order after a pre-trial evidentiary hearing admitting evidence of his attempt to influence the trial testimony of his sister. The Commonwealth moved pre-trial to admit evidence of Appellant's attempt, on the eve of a scheduled trial date, to coordinate or sway his sister's proposed trial testimony as proof of his consciousness of guilt. Specifically, to admit the recordings of the phone calls made from prison by Appellant and a fellow inmate to Appellant's sister on May 26, 2022, and the "script" used by the fellow inmate when speaking with the sister, which was found in his cell on May 27, 2022. The trial court held an evidentiary hearing on the Commonwealth's motion on August 29 and 30, 2022. It issued a written order admitting the evidence on September 7, 2022.

Generally, "[q]uestions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa. Super. 2018) (citation omitted). In addition, "[w]hen ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion

standard of review." ***Commonwealth v. Hutchison***, 164 A.3d 494, 500 (Pa. Super. 2017) (quotations and citations omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias or ill-will, or such lack of support so as to be clearly erroneous." ***Crosley***, 180 A.3d at 768; ***Commonwealth v. Cook***, 231 A.3d 913, 919 (Pa. Super. 2020) (similar). ***See also Commonwealth v. DiStefano***, 265 A.3d 290, 297 (Pa. 2021) (appellant cannot meet heavy burden of establishing abuse of discretion by simply persuading appellate court that it may have reached different conclusion than trial court).

As to the admissibility of evidence at trial:

> All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Even if evidence is relevant, the court may nonetheless exclude it if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

***Commonwealth v. Gross***, 241 A.3d 413, 418-19 (Pa. Super. 2020) (citations and quotation marks omitted).

The trial court explained its reasoning admitting the recordings of the prison phone calls to Appellant's sister and an alleged script written by the Appellant of testimony to be given by his sister at trial, as follows:

> This Court will address both of these items of evidence together as the motions in limine were presented together.

- 16 -

On May 31, 2022, the Commonwealth filed a Motion in Limine to introduce three prison phone calls purporting to alter the testimony from Appellant's sister Audrey Bautista at trial and a prepared transcript that matched the content of a prison phone call from inmate Justin Santiago to Audrey Bautista. These phone calls were alleged to have taken place from the prison on May 26, 2022 and [Appellant's] trial was scheduled to begin on May 31, 2022. Appellant's scheduled trial date was postponed in light of this Motion and new counsel was appointed due to a conflict based on these phone calls and the prepared transcript. A hearing on the same was held on August 29, 2022 with the Commonwealth along with Appellant and counsel present.

The Appellant objected to the introduction of these phone calls and the transcript as not being able to be properly authenticated under Pennsylvania Rule of Evidence 901, and as lacking relevance under Pennsylvania Rule of Evidence 401. The Commonwealth presented testimony from Sergeant Michael Johnson, Richard Fitzgerald, Officer Steve Valdez, and Audrey Bautista at the hearing on this matter. Further, counsel for both sides were allowed to offer oral argument on the issues.

Pa.R.E. 901 provides:

> (a) In General. Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
>
> (b) Examples. The following are examples only--not a complete list-- of evidence that satisfies the requirement:…
>
> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

The Commonwealth, as "[a] proponent of document need only present a prima facie case of some evidence of genuineness in order to put the issue of authenticity before the factfinders." *Commonwealth v. Brooks*, 508 A.2d 316, 320 (Pa. Super. 1986). "The ultimate determination of authenticity is for the jury." *Id.* At the motion in limine hearing, the evidence that was developed included the following facts: Audrey Bautista is [Appellant's] sister; her phone number was the one called from the prison three times; [Appellant's] was the male voice on the

first and third phone calls; the female voice on all three phone calls made the same day was Audrey Bautista's; the prison phone system has a voice recognition program for inmates to call out; all prison phone calls are recorded; when a prison phone call is initiated a recording tells you the call is being recorded; the male voice on the second call was Justin Santiago[;] Justin Santiago read the transcript to Appellant's sister; the letter transcript was found in Justin Santiago's cell at Berks County Prison; the letter transcript listed "my sister Audrey" at the top; the number on the top of the letter transcript matched the number called three times; and Justin Santiago and [Appellant] are in the same cell block (I-Block) at Berks County Prison. The record established at the motion in limine hearing regarding this letter and the phone calls presented a prime facie case that the letter and phone calls have some evidence of genuineness. Thus, this Court made a preliminary determination that the letter and phone calls were properly authenticated and admissible.

Trial Court Opinion, 15-17

We have reviewed the record of the Motions in Limine and discern no abuse of discretion in the trial court's ruling. "Authentication generally entails a relatively low burden of proof and requires only, as stated in Rule of Evidence 901, that the proponent 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" **Commonwealth v. Kurtz**, 294 A.3d 509, 527 n.12 (Pa. Super. 2023) (citing Pa.R.E. 901(a)), **appeal granted**, 306 A.3d 1287 (Pa. 2023) (on search and seizure issues). Here, the handwritten "script" was read to Appellant's sister and referred to "my sister Audrey" on the face of it. N.T. 8/29/22 – Motion, 26-27, 40-42. Appellant called his sister first to tell her someone else would call her to give her the "full lay down," that person used Santiago's voice activated password, read the "script" to the sister and the "script" was found in Santiago's cell the next day. **Id**., 14-15, 26-27, 40-42; N.T. 8/30/22 – Motion, 31-34. The

circumstantial and direct evidence sufficiently authenticated the recordings and the "script." *See Commonwealth v. Reed*, 292 A.3d 601, 608 (Pa. Super. 2023) ("Contextual clues in the text message, in conjunction with … testimony, provide ample evidence to authenticate the text message as a communication from Appellant").

On appeal, Appellant no longer argues whether the evidence was relevant or that the alleged prejudice outweighed its probative value.[4] Rather, he argues only that "that the phone calls and 'script' were not properly authenticated." Appellant's Brief, 42. His principal argument is that Santiago did not testify and the keeper of the recordings was not "personally familiar with the sound of Appellant's or Santiago's voices." *Id*. This is of no matter as the identification of Appellant's handwriting on the "script," the use of Santiago's voice activated password to access the prison phone system to call Appellant's sister to read her the "script" and the discovery of the script in his

---

[4] Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Pa.R.E. 401(a), (b); *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021). A "defendant's consciousness of guilt, like motive, is highly relevant in the determination of guilt." *Commonwealth. v. Flamer*, 53 A.3d 82, 88 (Pa. Super. 2012). *See Commonwealth v. Ivy*, 146 A.3d 241, 252 (Pa. Super. 2016) (evidence of consciousness of guilt is relevant and admissible even where it also evidences a prior bad act); *Commonwealth v. Pestinikas,* 617 A.2d 1339, 1347–48 (1992) (holding that evidence of consciousness of guilt is relevant to form a basis from which guilt can be inferred). The recordings and "script" are therefore relevant because collectively they are "an attempt by Appellant to affect the testimony of a witness, his sister, Audrey Bautista, along with possibly 'Guy' [the sister's boyfriend] and 'mom.'" Trial Court Opinion, 17.

cell all circumstantially authenticate the identity of the author and the speaker.[5] That Appellant's sister allegedly did not understand all of Santiago's message to her, Appellant's Brief, 42, only was a factor in whether Appellant's attempt to sway his sister's testimony was successful. It did not alter whether the evidence proved Appellant's consciousness of guilt.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2024

_____

[5] Contrary to Appellant's assertions in his brief, **see** Appellant's Brief, 42, Detective Steve Valdez recognized Santiago's voice on the recording from having interviewed him in an unrelated matter and was able to use the "script" to follow along on the recording of the call to confirm its content. N.T. 8/29/22 – Motion, 40-43. The detective also recognized Appellant's handwriting from previous experience and by comparing a previously authenticated document to the "script." **Id**., 44-45. Appellant also asserts that the technician who downloaded the recordings and identified them in court only listened to "similar" recordings. Appellant's Brief, 42. To the extent that he implies the technician never identified the recordings, he is mistaken, as he testified that the discs containing the recordings had been copied by him and checked to confirm they worked and were the recordings requested by the Commonwealth. N.T. 8/29/22 – Motion, 13-19.