J-S05032-25

2025 PA Super 39

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYQUILL PLEDGER | : | |
| | : | |
| Appellant | : | No. 1539 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001753-2022

BEFORE:   BOWES, J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED FEBRUARY 2024**

Appellant, Dyquill Pledger, appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia after he was found guilty of third-degree murder and multiple firearms violations in a non-jury trial. After careful consideration, we affirm.

The trial court opinion aptly sets forth the relevant facts and procedural history:

FACTUAL HISTORY:

On October 23, 2020, at approximately 8:00 p.m. near the 1700 block of North 31st street in Philadelphia, Appellant, Dyquill Pledger, shot decedent, Daniel Robinson, 13 times.  Appellant and decedent were cousins.  Bystanders heard the gun shots and called Philadelphia Police officers.  Officers quickly responded to the radio call.

---

[*] Former Justice specially assigned to the Superior Court.

Detective Tyrone Davis identified two crime scenes. [T]he primary crime scene, the 1700 block of North 31st Street[, was] where Detective Davis found nine 9 mm fired cartridge cases, four.40 caliber fired cartridges, and one projectile. The secondary crime scene was located at 3100 Montgomery Avenue. At this crime scene, Detective Davis went to the rear of 3100 West Montgomery Avenue which is Eyre Street. There, the detective located a nine-millimeter firearm. N.T., 10/16/2023, at 23-25; N.T., 10/17/2023, at 4-7; N.T., 10/18/2023, at 48.

A Real Time Video Crime camera, located near 3130 West Montgomery Avenue, revealed that three males went to the secondary crime scene at different times looking for the discarded gun. The three males were looking over a fence. [See] Cmwlth Exhbt. C-40. After detectives reviewed [the footage], officers from the crime scene went back out to fingerprint the fence. Based on the video, as well as eyewitness testimony from Demetrius Thomas, Detective Davis obtained a court order to get fingerprints from Appellant. Appellant's fingerprints matched the prints from the fence where detectives recovered the firearm at the secondary crime scene. Cmwlth. Ex. C43; N.T., 10/17/2023, at 7-22.

After the shooting, Mr. Thomas went to the Homicide Unit to give information about the case. Mr. Thomas told detectives he had information for this homicide and also indicated he wanted something in exchange to help him [in] an open case he had. While there, Mr. Thomas told officers that Appellant shot and killed "Cousin Boo"[fn1] on October 23, 2020.

---

FN1. ["]Cousin Boo["] is a nickname for the Decedent in this case, Daniel Robinson.

---

[At Appellant's criminal trial,] Mr. Thomas testified that he has known Appellant since middle school. They saw each other almost every day. [In the moments] [p]rior to the shooting, many people were just "hanging out" on the block. Mr. Thomas was on the block looking to buy marijuana. He was there for about five minutes when Appellant "upped his gun" and shot [Robinson]. Mr. Thomas testified that he did not see Appellant and [Robinson]

- 2 -

interact while he was there. He did not see anyone else shoot that night. N.T., 10/18/2023, at 43-52.

A stipulation was made by and between counsel concerning the medical examiner's testimony. Dr. Albert Chew, the deputy chief medical examiner, did an internal and external examination of the decedent. His findings were that Mr. Robinson suffered 13 gunshot wounds. Dr. Chew determined the cause of death was multiple gunshot wounds and the manner of death was homicide. (Commonwealth Exhibit C10), (N.T., 10/17/2023 at 68-70). Appellant did not have a license to carry a gun at the time of the incident. (Commonwealth Exhibit C34), (N.T. 10/18/2023 at 79).

PROCEDURAL HISTORY:

On May 2, 2021, Philadelphia Police Officers arrested and charged Appellant with[, *inter alia*, the murder of the decedent, Daniel Robinson.] Following a waiver trial on October 18, 2023, Appellant was found guilty of [Murder in the Third Degree,[fn2] Possession of a Firearm Prohibited,[fn3] Firearms Not to be Carried Without a License,[fn4] Carrying a Firearm in Public in Philadelphia,[fn5] and Possession of an Instrument of Crime.[fn6] ]

---

Fn2     18 Pa.C.S. § 2502(c).
Fn3     18 Pa.C.S. § 6105(a)(1).
Fn4     18 Pa.C.S. § 6106(a)(1).
Fn5     18 Pa.C.S. § 6108.
Fn6     18 Pa.C.S. § 907.

---

On December 18, 2023, the court sentenced Appellant [to 17 to 40 years of incarceration on Murder in the Third Degree, 5 to 10 years of incarceration on Possession of a Firearm Prohibited, consecutive to the sentence for 3rd Degree Murder, 1 to 2 years on Firearms Not to be Carried Without a License, concurrent, 1 to 2 years on the Carrying a firearms in Public in Philadelphia, concurrent, and 1 to 2 years on Possession of an Instrument of Crime, also concurrent.]

Appellant filed a [counseled] post sentence motion on December 26, 2023, [stating, in relevant part:

> Defendant . . . by and through his counsel . . . respectfully moves to request that [the trial court] grant Post Sentence Motions. In support thereof, defendant avers as follows:
>
> 1. That the Defendant was found guilty of 3rd degree murder and related offenses after a waiver trial before Judge Diana Anhalt on October 18, 2023. He was sentenced to 22 ½ to 50 years SCI with credit for time served in the aggregate.
>
> 2. The trial judge erred by finding the defendant guilty of 3rd degree murder and related offenses which were against the weight and sufficiency of the evidence.
>
> WHEREFORE, defendant . . . respectfully requests that [the trial court] GRANT his Post Sentence motions in this matter and have the verdict vacated and a new trial GRANTED.
>
> Post-Sentence Motion filed 12/26/2023.] The post sentence motion . . . was denied by operation of law on May 2, 2024.
>
> On June 3, 2023, Appellant filed a Notice of Appeal to the Superior Court. The Court ordered Appellant to file a Concise Statement of Matters Complained on Appeal pursuant to Pa.R.A.P. 1925(b) on June 6, 2024. Appellant filed his Statement of Matters Complained on Appeal on July 2, 2024.

Trial Court Opinion, 8/14/2024, at 3-5, 1-3 (supplemental text denoted by brackets)

> Appellant raises two questions for this Court's consideration:
>
> 1. Did the trial judge err as a matter of law by allowing a verdict of third-degree murder to stand which was against the weight and sufficiency of evidence, when the evidence in this case could easily have made out a verdict of not guilty because of the lack of credibility of the Commonwealth's witness and the physical evidence which do not support a conviction of the homicide charges?
>
> 2. Did the sentencing judge err by failing to state on the record the reasons for an aggravated sentence in this case, by failing

to sentence on weighing factors on a qualitative basis, or alternatively by sentencing consecutively and failing to consider the circumstances of the case and the Appellant's rehabilitative needs?

Brief for Appellant at 8.

In Appellant's first issue, he contends that the evidence was either insufficient to support the guilty verdict or, in the alternative, against the weight of the evidence, because "the evidence in this case could easily have made out a verdict of not guilty because of the lack of credibility of the Commonwealth's witness and the physical evidence." We disagree.

We begin by setting forth our standard of review of a sufficiency of the evidence claim:

> Our standard of review is whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to enable the fact[-]finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt.

***Commonwealth v. Cruz***, 71 A.3d 998, 1006 (Pa. Super. 2013) (citation and brackets omitted).

> In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.... Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit

- 5 -

of all reasonable inferences to be drawn from the evidence.

***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009) (citation omitted).

***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). These principles apply to a challenge to the sufficiency of the evidence offered to identify a defendant as the perpetrator of the alleged crime. ***Commonwealth v. Smith***, 323 A.3d 212, at *2 (non-precedential decision)(Pa. Super. filed June 18, 2024)[1] (citing ***Commonwealth v. Smyser***, 195 A.3d 912, 915) (Pa. Super. 2018)).

This Court has further noted:

> [T]o convict a defendant of the offense of third[
> ]degree murder, the Commonwealth need only prove
> that the defendant killed another person with malice
> aforethought. This Court has long held that malice
> comprehends not only a particular ill-will, but [also a]
> wickedness of disposition, hardness of heart,
> recklessness of consequences, and a mind regardless
> of social duty, although a particular person may not
> be intended to be injured.

***Commonwealth v. Fisher***, 622 Pa. 366, 80 A.3d 1186, 1191 (2013) (citations omitted). "[I]t is well established in Pennsylvania that a fact finder may infer malice and a specific intent to kill from the use of a deadly weapon upon a vital part of the victim's body." ***Commonwealth v. Cruz***, 919 A.2d 279, 281 (Pa. Super. 2007).

***Crosley***, 180 A.3d at 767.

---

[1] ***See*** Pa.R.A.P. 126(b) (stating that non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value).

- 6 -

As for Appellant's contention that the verdict was against the weight of the evidence, we apply the following precepts.

"The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. ***Talbert***, 129 A.3d at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.*** at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." ***Id.*** at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Id.*** (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." ***Id***. (citation and internal quotation marks omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (emphasis omitted). A court abuses its discretion when its decision "represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

*Commonwealth v. Grubb*, No. 1409 WDA 2023, 2024 WL 4793031, at \*2–3 (non-precedential decision) (Pa. Super. Ct. Oct. 16, 2024).

Both the sufficiency of the evidence and the weight of the evidence claims that Appellant presents for our consideration place in issue the Commonwealth's identification evidence.[2] Specifically, Appellant claims Thomas admitted he did not see Appellant fire the shots that killed Decedent but only looked towards Appellant at the sound of gunfire, which is when, he testified, he saw Appellant standing with his gun raised at Decedent. Appellant likewise questions Thomas' ability to have seen the shooting that occurred after dark and amidst other bystanders. Brief of Appellant, at 18-19.

Furthermore, Appellant contends his DNA was one sample of two recovered from the magazine of the 9-millimeter gun used to kill Appellant, and his fingerprints and palmprints recovered from the top of a fence enclosing the lot where police found the 9-millimeter gun were among other prints. Finally, Appellant argues the trial court erred in deeming Thomas credible despite the Commonwealth's admission that Thomas approached them hoping

---

[2] To the extent Appellant argues that the Commonwealth failed to satisfy an element to the charge of third-degree murder, such as malice, we understand such arguments as asserting that evidence did not prove it was Appellant who fired the 9-millimeter gun used to kill Decedent. *See* Brief of Appellant at 17, (in which Appellant posits, "Contrary to the examples of malice found in *Commonwealth v. Johnson*, where the defendant pointed a gun at the decedent and the gun discharged unintentionally, or the defendant used a deadly weapon on a vital part of the decedent's body, here there was insufficient evidence presented by the Commonwealth that the Appellant ever shot the decedent or pointed a gun at the decedent.")

to gain a benefit in his own criminal case by offering testimony in the present matter.

Applying our standard of review, in which we view the evidence in a light most favorable to the Commonwealth as verdict winner, we determine Appellant's claims must fail, as they ask us to do that which we may not, which is to reassess the credibility of testimony and parse each item of evidence individually rather than consider the totality of evidence and all reasonable inferences therefrom that led the finder of fact to its determination. When we view the evidence in accordance with our standards of review, we find it both sufficient to identify Appellant as the shooter who murdered Decedent and able to withstand a weight of the evidence challenge addressed to the discretion of the trial court in post-sentence review.

The record reveals that eyewitness Demetrius Thomas volunteered information on the shooting after he was arrested in a separate incident occurring in Jan of 2021. N.T., 10/18/2023, at 45-48. Advised by the Commonwealth that it could not promise he would receive any benefit by testifying, Thomas still came forward to present eyewitness testimony accusing Appellant of fatally shooting Decedent.

At Appellant's bench trial, Thomas began by asserting categorically that Appellant killed Decedent and making an in-court identification of him when asked to do so. N.T. at 47. Thomas then segued to testimony describing his observations at the shooting site, which the Commonwealth designated as the "primary crime scene."

Specifically, Thomas explained he had arrived at the 31st Street and Montgomery Avenue neighborhood block about five minutes beforehand and was alone among "a lot of people" who were familiar to him and just "hanging out." N.T. at 46-50. He was there to "buy weed," and as he waited for his seller to arrive he noticed Appellant was talking on a cell phone while Decedent seemed about ready to walk to another person's car to leave the scene. N.T. at 51.

That was when Appellant "upped his gun," Thomas testified, explaining that this "hood term" or "street term," as he called it, meant he heard the first gunshot and reflexively turned to the sound to see Appellant already had his gun up and "like shot him [Decedent]." N.T. at 51, 52.[3] Thomas indicated

_____

[3] In dialogue with the trial court, Thomas clarified:

| **Trial Court:** | When you say upped the gun, that means he raised up a gun? |
|---|---|
| **Thomas:** | Yes, ma'am. |
| **Trial Court:** | Okay. That is what you saw with your own eyes [incomplete interruption by Thomas] [a]nd then you hear shots and run? |
| **Thomas:** | I really can't say. . . . I didn't see him up the gun. I just – when you look, you see the shot. You feel me. When you hear the shots, you look in the direction of the shots, you see what's going on. |
| **Trial Court:** | So that is what – |
| **Thomas:** | I didn't see him directly up it. I see it up. |

*(Footnote Continued Next Page)*

Appellant and Decedent were both moving on the sidewalk while about eight to ten feet apart when the shot was fired. N.T. at 55.[4] He did not see where Decedent was injured, N.T. at 54, and could not say if Decedent was falling or trying to get away after being shot. N.T. at 54-55. As Thomas ran from the scene, he heard other shots but did not see who was firing or count how many shots were fired. N.T. at 53, 54.

Sitting as finder of fact, and with knowledge of how Thomas became a witness and of what conditions and circumstances may have affected Thomas' ability to perceive the shooting,[5] the trial court credited Thomas' eyewitness account identifying Appellant as the person who fatally shot Decedent. The trial court reasonably found its credibility determination of Thomas was corroborated by both fingerprint analysis, which identified Appellant as one of just three men depicted by a surveillance camera peering over a fence at the location where police discovered the discarded murder weapon that same

_____

**Trial Court:** You seen it up already?

**Thomas:** Yeah.

N.T., 10/18/23, at 52-53.

[4] The reliability of Thomas' ability to estimate distance was called into question during cross-examination, where he estimated the witness box where he sat was five feet from the entry door to the courtroom, when consensus among the court and counsel agreed the span was more like 40 feet. N.T. at 62.

[5] We note, for example, that there was no evidence suggesting, let alone establishing, the absence or inadequacy of streetlighting on the Philadelphia residential block in question.

evening, and DNA analysis, which identified Appellant as one of just two men who had handled the magazine to the murder weapon. *See* N.T., 10-17-23, at 18-19, 21. Under this record, we discern no merit to Appellant's sufficiency claim and see no basis on which to grant relief on Appellant's weight of the evidence claim when Appellant has not shown that the trial court exceeded the limits of its discretion when it denied by operation of law his motion for post-sentence relief.

In Appellant's remaining issue, he asserts that the trial court improperly imposed an aggravated range sentence. Such a claim implicates the discretionary aspects of his sentence. "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015). Appellant must "establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 944 (Pa. 2018).

Challenges to the discretionary aspects of sentencing are not absolute. *See Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). Rather, we consider such challenges as petitions for allowance of appeal. *See id*. Thus, an appellant must invoke our jurisdiction by satisfying a four-part

test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Id*.

Our review of the record shows that Appellant has failed to present this issue in a Pa.R.A.P. 2119(f) statement. The Commonwealth, moreover, objects to Appellant's failure to comply with Rule 2119(f) and asks that we find the issue waived. Accordingly, we find that Appellant has waived his discretionary sentencing claim. **See *Commonwealth v. Devine***, 326 A.3d 935, 939 (Pa. Super. 2024).

In any event, even if Appellant had not waived his discretionary sentencing claim under either a Rule 2119(f) or by failing to raise it in his post-sentence motion,[6] we would agree with the trial court that it did not sentence Appellant to an aggravated range sentence but, instead, imposed a standard guideline range sentence for third degree murder and a below-guideline range sentence for VUFA and ran them consecutively. As the trial court observes, "the fact that the [trial] court made those sentences

_____

[6] The trial court's Pa.R.A.P. 1925(a) opinion indicates, without discussion, that Appellant preserved his discretionary aspects issue in a post-sentence motion. Our review of the issues raised in Appellant's post-sentence motion, reproduced *supra*, does not reveal a discretionary aspects of sentencing claim challenging an aggravated range sentence. Nevertheless, because we reject Appellant's sentencing claim on other grounds and otherwise agree with the trial court's alternate basis for denying this claim, we address the substance of Appellant's post-sentence motion no further.

consecutive does not make them "aggravated," nor does it show an abuse of discretion. ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010).

Judgment of Sentence is affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2025